**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONICA BRUCE and DONNA STUBBS, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br>    v.<br><br>TELEFLORA, LLC,<br><br>                  Defendant. | Case No. 2:13-cv-3279-ODW(CWx)<br>**ORDER GRANTING TELEFLORA'S MOTION TO DISMISS [25] AND DENYING MOTION TO STRIKE [25]** |

## I.    INTRODUCTION

Defendant Teleflora, LLC moves to dismiss claims one and two of Plaintiffs' First Amended Class-Action Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs Monica Bruce and Donna Stubbs, out-of-state residents, cannot extraterritorially apply California's consumer-protection laws.  (ECF No. 25.)  Teleflora also moves to strike portions of the FAC pertaining to California's consumer-protection laws; products not purchased by Plaintiffs; advertisements not seen or relied upon by Plaintiffs; and late delivery.  For the following reasons, the Court **GRANTS** Teleflora's Motion to Dismiss and **DENIES** Teleflora's Motion to Strike.[1]

---

[1] After carefully considering the papers filed with respect to these Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.    BACKGROUND

Monica Bruce and Donna Stubbs, residents of Texas and Kansas respectively, purchased floral arrangements from Teleflora.  (FAC ¶¶ 13, 14, 44–45, 51–52.)  Teleflora is not a florist, nor does it hold any flowers in inventory.  (FAC ¶ 21.)  Instead, Teleflora maintains a network of more than 18,000 local florists to fill customers' orders. (FAC ¶¶ 21, 26.)  Customers purchase floral arrangements through Teleflora by visiting www.Teleflora.com, selecting products for purchase, inputting specific delivery dates, and paying Teleflora with their credit cards.  (FAC ¶¶ 22–23.)  Teleflora's website provides an extensive photo gallery of all the floral arrangements for sale.  (FAC ¶ 22.)  Alongside each color photo, Teleflora describes the specific flowers, vase, and other items used in the arrangement.  (*See* Walker-Roletter Decl. Ex. A.)

Although Teleflora is incorporated in Delaware and headquartered in Los Angeles, California, it markets and sells floral products to consumers throughout the United States via its member-florist network, various websites, advertisements, and toll-free phone numbers.  (FAC ¶¶ 15–16, 21.)  Plaintiffs state that Teleflora's marketing and sales decisions regarding its floral arrangements are made, managed, and emanate from its California headquarters.  (FAC ¶ 16.)

Bruce purchased two floral arrangements after relying on corresponding photographs and descriptions on Teleflora's website.  (FAC ¶¶ 44–45.)  On December 21, 2012 she bought a *Sunny Smiles* arrangement, which was delivered to her cousin in Virginia.  (FAC ¶ 44.)  On December 26, 2012, Bruce purchased a *Jumping for Joy* arrangement for her mother.  (FAC ¶ 45.)  Bruce's mother received this arrangement in Florida.  (*Id.*)  Shortly thereafter, Bruce's cousin sent her a card thanking her for the flowers and a picture of the actual arrangement she received.  (FAC ¶ 46, Ex. 4.)  Bruce's mother also showed Bruce pictures of the *Jumping for Joy* arrangement.  (FAC ¶ 47, Ex. 6.)  Upon viewing these photographs, Bruce was "extremely disappointed" that both arrangements were "far different from and inferior to" the

representative photographs and descriptions on Teleflora's website.  (FAC ¶¶ 46, 47.)  When Bruce complained to Teleflora about the inferior arrangements, she received a 30%-off coupon that she deemed worthless.  (FAC ¶¶ 48–49.)  Teleflora did not refund her purchases.  (FAC ¶ 49.)

In August 2011, Stubbs ordered two *Rosy Birthday Presents*, with balloons and chocolates, from Teleflora's website.  (FAC ¶ 51.)  On her purchase order, Stubbs requested that the arrangements be delivered to her relatives on their birthdays, September 1, 2011, and September 8, 2011.  (*Id.*)  In May 2012, Stubbs ordered an *Always a Lady* arrangement, with a balloon and chocolates, to be delivered to her sister on May 13, 2012.  (FAC ¶ 52.)  None of the three arrangements were delivered. (FAC ¶¶ 51, 52.)  Stubbs complained about the non-delivery of her orders but never received a refund from Teleflora.  (FAC ¶ 53.)

Plaintiffs' FAC seeks damages on behalf of themselves and all others similarly situated, who have purchased Teleflora's floral arrangements from May 8, 2009, to the present, and (1) received inferior or different floral arrangements than what they ordered, or (2) did not receive floral arrangements on the scheduled delivery dates or at all.  (FAC ¶ 55.)

The FAC raises five claims, each centered on Teleflora's marketing and sales conduct, or its failure to timely deliver floral arrangements.   These claims are as follows:

- violation of the California Consumer Legal Remedies Act, Civil Code sections 1770(a)(5), (7), (9) ("CLRA") (Claim 1);
- violation of California Unfair Competition Law, Business and Professions Code section 17200 ("UCL") (Claim 2);
- breach of express contract (Claims 3, 4);
- breach of express warranty (Claim 5).

/ / /
/ / /

3

### III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).   A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6).   *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2).   For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement."   *Id.*   Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice.   *Id.*   Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively.   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]."   *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).   Conclusory allegations, unwarranted deductions of fact, and

unreasonable inferences need not be blindly accepted as true by the court.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief.  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    DISCUSSION

Teleflora moves to dismiss the CLRA and UCL claims because Plaintiffs are out-of-state residents.  (Mot. 7.)  Specifically, Teleflora attacks Plaintiffs' CLRA and UCL claims as improper because the alleged misconduct and corresponding injury took place in Texas and Kansas—not California—and thus Plaintiffs cannot assert California's consumer-protection laws.    (Mot. 9–10.)    Plaintiffs respond that California law applies because Teleflora's deceptive conduct took place in California, where it manages its sales transactions and website.  (Opp'n 1.)

To assert a California state-law cause of action, an out-of-state party must suffer injury from wrongful conduct that occurs in California.  *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224–25 (1999).  In *Norwest*, the court held that out-of-state plaintiffs could not raise UCL claims because their injuries were "caused by conduct occurring outside of California's borders by actors headquartered and operating outside of California." *Norwest*, 72 Cal. App. 4th at 226.

In deciding a motion to dismiss for CLRA or UCL claims, a court must ascertain whether a complaint has sufficiently alleged a connection between the injuries, misconduct, and California.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d

883, 917 (C.D. Cal. 2011) (dismissing plaintiffs' CLRA and UCL claims because plaintiffs' allegation that "[Toyota's] decision to . . . engage in deceptive marketing was made, in part, in California" was unsupported by facts).  Moreover, a transaction or injury with little relation to the forum state may violate constitutional due process if there are insignificant contacts (or aggregation of contacts) with the state.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

Here, Plaintiffs reside in Texas and Kansas, and neither have alleged any injury or interaction in California.  (FAC ¶¶ 13, 14.)  Both Plaintiffs visited Teleflora's website and purchased the floral arrangements, but the FAC does not state any facts suggesting that the underlying transactions were in California or that Teleflora's web servers were located in California.  (FAC ¶¶ 44, 45, 51.)  Bruce alleges that the materially inferior floral arrangements purchased through Teleflora were received by her relatives in Virginia and Florida—not California.  (FAC ¶¶ 44, 45.)  Regardless who was actually injured (Bruce as purchaser or her relatives as recipients), these injuries did not occur in California.  As for Stubbs, she did not indicate the delivery location of her floral arrangements.   But that matters not since they were never delivered.  (FAC ¶¶ 51, 52.)  Her injury from the non-delivery occurred in Kansas, her state of residence, and not California.

Plaintiffs also fail to demonstrate that Teleflora's wrongful conduct occurred in California.  On one hand, Plaintiffs vaguely assert that Teleflora makes its marketing and sales decisions throughout the U.S. from its California headquarters.  (FAC ¶ 16.)  Yet on the other hand, Plaintiffs also acknowledge that Teleflora "is not a florist, does not employ any florists, . . . has no flowers in inventory," and uses over 18,000 local florists nationwide to fill customers' orders.  (FAC ¶ 21.)  Despite the fact Teleflora's headquarters is in California, the FAC is unclear as to exactly where the wrongful conduct occurred.  Plaintiffs baldly argue that "the wrongful conduct complained of was conducted by Teleflora in California, not by the local florists in Plaintiffs' states of residence."  (Opp'n 2 n.3.)  But upon review of the FAC, the Court finds no facts

supporting this argument.  Plaintiffs fail to allege sufficient facts to demonstrate that Teleflora committed wrongful acts in California that caused Bruce's relatives to receive inferior floral arrangements, or Stubbs's relatives to not receive Stubbs's floral arrangements.  Or for that matter, Plaintiffs fail to distinguish whether it was Teleflora or the local florists that committed the wrongful acts that led to the disappointing customer experiences.

Though it is possible for non-residents to bring a claim under CLRA or UCL for injury occurring outside California based on conduct within California, a plaintiff must allege sufficient facts demonstrating so.  *See In re Toyota*, 785 F. Supp. 2d at 917–18.  Plaintiffs have failed to meet that burden.  Because of that failure, the Court sees no need to analyze choice-of-law issues under *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987).

## V.    MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The function of a 12(f) motion to strike is to avoid the expenditure of time and money in litigating spurious issues by disposing of them prior to trial.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

As to the allegations in the FAC pertaining to CLRA and UCL, those claims are dismissed and thus, Teleflora's Motion is rendered moot.  And as for allegations concerning products not purchased by Plaintiffs, advertisements not seen or relied upon by Plaintiffs, or late delivery, the Court finds no reason to strike these allegations at this time.  Teleflora's arguments for striking these allegations are better addressed at the class-certification stage.

/ / /

/ / /

/ / /

/ / /

# VI.   CONCLUSION

Accordingly, Teleflora's Motion to Dismiss is **GRANTED** and Plaintiffs' CLRA and UCL claims are **DISMISSED WITH PREJUDICE**.  Teleflora's Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

September 19, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**